IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William Auston Cash,            )<br>                                 )<br>                    Plaintiff,   )<br>                                 )<br>        vs.                      )<br>                                 )<br>James Metts, E.V. Kirkland, Dan Doe, )<br>John Doe, and Bennett E. Casto, )<br>                                 )<br>                    Defendants.  )<br>_____) | Civil Action No. 6:12-1815-MGL-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motions for summary judgment (docs. 57, 58). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983.

Defendant Casto filed a motion for summary judgment on December 21, 2012 (doc. 57), and defendants Kirkland and Metts filed a separate motion for summary judgment on the same day (doc. 58). By order filed December 27, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. On January 4, 2013, the plaintiff filed a response in opposition (doc. 65), and the defendants filed a reply on January 14, 2013 (doc. 75).

**FACTS PRESENTED**

At all times covered by the plaintiff's amended complaint, he was an inmate in the Lexington County Detention Center ("LCDC"). The plaintiff is now incarcerated in the Walden Correctional Institution, which is part of the South Carolina Department of Corrections ("SCDC").

On March 22, 2012, the plaintiff was arrested by the Lexington County Sheriff's Department and charged with one misdemeanor count of possession of marijuana, two felony counts of distributing methamphetamine, one felony count of unlawfully possessing a weapon, and one felony count of manufacturing methamphetamine (doc. 57-2, Casto aff. ¶ 6). The plaintiff was later charged with trafficking methamphetamine after additional testing by law enforcement revealed he had been in possession of approximately 276 grams of methamphetamine (*id.* ¶ 7). The amount of methamphetamine that the plaintiff had possessed also warranted his weapons charge to be enhanced to a charge of possession of a weapon during the commission of a violent crime (*id.*; *see* docs. 136-1 and 136-2, Kirkland aff., ex. A, B (arrest warrants)).

Defendant Bennett Casto is an Assistant Public Defender with the Eleventh Judicial Circuit Office of the Public Defender (Casto aff. ¶ 3). In late March 2012, shortly after the plaintiff's arrest, defendant Casto was appointed to represent the plaintiff on each of his felony charges, but he was not appointed to represent the plaintiff on his misdemeanor charge of marijuana possession (*id.* ¶¶ 6–7). After being appointed to represent the plaintiff, defendant Casto met with him several times at the LCDC as he prepared to defend the plaintiff against his criminal charges (*id.* ¶ 8).

At some point during his representation of the plaintiff, defendant Casto received a call from an Assistant Solicitor informing him that federal agents wished to speak with the plaintiff in regard to a federal racketeering and conspiracy investigation (*id.* ¶ 9). However, because none of the plaintiff's pending charges dealt with the federal investigation, defendant Casto was not invited to participate in the proposed meeting between the plaintiff and the federal agents (*id.* ¶ 10). Defendant Casto was later informed by the plaintiff that the potential targets of the federal investigation were individuals defendant Casto had been introduced to at a local restaurant (*id.* ¶ 11). Upon learning of the potential conflict, defendant Casto informed the Eleventh Judicial Circuit Public Defender, who made the decision to conflict the plaintiff's case out of their office. Defendant

Casto terminated his representation of the plaintiff in late June 2012 (*id.*). Defendant Casto denies the claim that he delivered threats to the plaintiff (*id.* ¶¶ 12-14).

The plaintiff wrote a letter to the Supreme Court of South Carolina Office of Disciplinary Counsel alleging that defendant Casto engaged in professional misconduct. After an investigation, the office found no evidence of lawyer misconduct and dismissed the complaint (*id.* ¶ 15; doc. 57-3. Casto aff., ex. A).

Defendant Eric Kirkland is a narcotics investigator employed by the Sheriff of Lexington County and is assigned as a special agent with the Lexington County Multi-Agency Narcotics Enforcement Team ("LCMANET") (doc. 136, Kirkland aff. ¶¶ 2–3).[1] Defendant Kirkland was the arresting officer on the plaintiff's state drug and weapons charges described above (*id.* ¶¶ 5-10). On April 25, 2012, defendant Kirkland picked up the plaintiff from the LCDC and took him to the magistrate's office for a hearing on his misdemeanor marijuana charge. Because this charge was a misdemeanor, counsel was not appointed to represent the plaintiff. According to defendant Kirkland, he did not discuss with the plaintiff any of the offenses with which he was charged (*id.* ¶¶ 9-10). Defendant Kirkland states that, since his arrest, the plaintiff repeatedly reached out to him through letters claiming to have information regarding criminal activity that was unrelated to the charges that were then facing him (*id.* ¶¶ 12–16; doc. 136-3, Kirkland aff., ex. C (letters from plaintiff)). Because he was not involved with investigating the types of crimes the plaintiff alleged, defendant Kirkland notified the appropriate authorities (Kirkland aff. ¶ 13). A meeting was arranged so that the plaintiff could divulge the information that he claimed to have to federal agents (*id.* ¶¶ 14–15). Defendant Kirkland was not involved in that investigation, but he did attend a meeting between the plaintiff and the agents who were conducting the investigation (*id.* ¶ 15). Defendant Kirkland recalls that the plaintiff was read his *Miranda* rights, and he indicated that he was meeting upon his own free will (*id.*). The plaintiff did not face any criminal charges arising out of this investigation (*id.*).

---

[1] On February 7, 2013, the undersigned granted the defendants' motion to file defendant Kirkland's affidavit and attached exhibits under seal (*see* doc. 87).

The plaintiff alleges in his amended complaint[2] that defendant Kirkland and two federal agents, whom he identifies only as Dan Doe and John Doe, improperly questioned him. He claims they had him sign a document waiving his attorney and a document "for witness protection." He claims that he was told that he would be out of jail in two weeks (doc. 20-3 at pp. 3-4). The plaintiff further alleges that members of the motorcycle club about which he had provided information to the federal agents were put in cells across the hall from him, and one of them threatened him. He complained to the guards, and he was moved to the protective custody wing on June 21, 2012 (*id.* at pp. 4-5). He claims that five members of the club were in the wing with him, and he was in fear of retaliation from them (*id.* at p. 5). The plaintiff claims that defendant Metts was responsible for his cell assignment (*id.*).

Defendants Metts is the duly elected Sheriff of Lexington County, South Carolina (doc. 58-2, Metts aff. ¶ 1). Defendant Metts has appointed a Jail Administrator, Major Kevin Jones, to handle the day-to-day operations of the facility (*id.* ¶ 3), and Sheriff Metts attests that he has not had any personal involvement with the plaintiff throughout his incarceration at the LCDC (*id.* ¶ 6).

According to the affidavit of Major Jones, the plaintiff's cell assignment at the LCDC was changed on June 21, 2012, when he was moved into the protective custody wing (doc. 58-3, Jones aff. ¶ 4; doc. 58-4, Jones aff., ex. A). According to an incident report dated June 25, 2012, the plaintiff notified a correctional officer that he was concerned about four other individuals who were assigned to the protective custody wing where the plaintiff had been assigned (doc. 58-5, Jones aff., ex. B). Upon receiving this information, the officer notified his supervisor, who ordered that the plaintiff and the other individuals be kept separated (*id.*; Jones aff. ¶ 8). As a result of the plaintiff's report, efforts were made to keep the plaintiff separated from the other individuals, and to Major Jones' knowledge, the

---

[2]The plaintiff amended his complaint on August 17, 2012, to add defendant Casto. He did not add additional causes of action against defendants Metts and Kirkland. The original and amended complaints were filed together to create one amended complaint (doc. 20; *see* doc. 22).

4

plaintiff has not been harmed by any of the individuals he identified as being a potential threat to his safety (Jones aff. ¶¶ 9-11).

The plaintiff alleges that defendant Casto, his former public defender, had to have told the motorcycle club members that the plaintiff had been talking to federal agents, as the only other people who knew were himself and the two federal agents (doc. 65, pl. aff. ¶ 23). He claims that Casto is "drinking buddies" with the club leader (*id.* ¶ 17). In addition, the plaintiff claims defendant Kirkland and the federal agents "had a meeting of the minds, all had a overreach of administrative authority" and that he should be placed in witness protection due to the threats against him (doc. 20-3 at pp. 5-6). The plaintiff also alleges that defendant Casto delivered threats to him during attorney visits and failed to represent him properly (doc. 20). As relief, the plaintiff seeks an investigation of the matter, to be told the names of the Dan and John Doe defendants, to be placed in witness protection, and $100,000 for "duress" (doc. 20-3 at p.7).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Defendant Casto***

In order to state a cause of action under 42 U.S.C. § 1983, the plaintiff must allege that he was deprived of rights, privileges or immunities secured by the Constitution and the laws of the United States by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  A public defender does not act under color of state law when representing a defendant in a criminal case. *Polk County v. Dodson*, 454 U.S. 312, 317-25 (1981).

While a public defender may be held to act "under color of state law" by engaging in intentional misconduct of conspiring with state officials to deprive a plaintiff of federal constitutional rights, *see Tower v. Glover*, 467 U.S. 914, 921–22 (1984), a plaintiff must plead such a claim with "with sufficient specificity and factual support to suggest a 'meeting of the minds.' " *Sutton v. Calhoun*, No. 86-6673, 1986 WL 18629, at *1 (4th Cir. Sept. 9, 1986) (citing *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir.1983)). To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996)).

A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Hinkle*, 81 F.3d at 421. A plaintiff's factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422.

The plaintiff has failed to allege or present evidence that defendant Casto acted jointly or in concert with any state actors in this matter or that some overt act was done in furtherance of a conspiracy that resulted in the deprivation of the plaintiff's constitutional rights (*see* doc. 65-1, pl. resp. m.s.j. at pp. 1-5). There is no evidence of any communication between defendant Casto and the other co-defendants that might give rise to an inference of an agreement to commit wrongful acts.[3] To the contrary, the plaintiff only alleges that he was not satisfied with the representation provided to him by defendant Casto and that defendant Casto allegedly delivered a threat to him. As argued by defendant Casto, to infer any sort of conspiracy between him and any of the other defendants in this matter would be pure speculation, as the plaintiff has produced no evidence, either direct or circumstantial, that defendant Casto acted in concert with any state actor to deprive him of his rights. Accordingly, any claim against defendant Casto for deprivation of the plaintiff's constitutional rights should be dismissed.

***Eleventh Amendment Immunity***

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996)

---

[3] The plaintiff submitted the affidavit of Dan Bifield on December 10, 2012 (*see* doc. 56, Bifield aff.). In that affidavit, Bifield states that he is the President of the Hells Angels and that he has been friends with defendant Casto for a year and a half. He states that he told Casto to tell the plaintiff to keep his mouth shut (*id.* ¶¶ 3, 7-8). However, the plaintiff produced no evidence that any state actors communicated with Casto or acted in concert with Casto to deprive the plaintiff of his rights.

(alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* It is well settled, both in South Carolina and federal law, that a Sheriff in South Carolina is an arm of the State and not a County employee and therefore is entitled to Eleventh Amendment Immunity in his or her official capacity from suit in Federal Court. *See Cromer*, 88 F.3d at 1332. Likewise, employees of the Sheriff are considered "arms of the State." *Cone v. Nettles*, 417 S.E.2d 523, 525 (S.C. 1992). As a result, to the extent the plaintiff has alleged claims against defendants Metts and Kirkland in their official capacities for monetary damages, such claims must be dismissed because these defendants are entitled to immunity pursuant to the Eleventh Amendment.

***Defendant Metts***

The plaintiff claims that when he complained that he had been threatened, defendant Metts told his officers to put him into protective custody (doc. 65, pl. aff. ¶¶ 3-4). He claims that there were motorcycle club members in the same wing with him, and he received further threats (*id.* ¶ 5). The cell placement is the only specific act by defendant Metts of which the plaintiff complains. Other than his bald assertion, the plaintiff has offered no evidence that would indicate that defendant Metts had any personal involvement in the plaintiff's placement in protective custody. Defendant Metts provided an affidavit stating that he has appointed a Jail Administrator, Major Jones, to handle the day-to-day operations of the facility, and he has had no involvement with the plaintiff throughout his detention at the LCDC (doc. 58-2, Metts aff. ¶¶ 2-3, 6). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

To the extent the plaintiff seeks to hold defendant Metts liable in his supervisory capacity, the doctrine of respondeat superior generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make the required showing here.

Furthermore, even if the plaintiff were able to establish a level of personal involvement by defendant Metts regarding his cell assignment, the plaintiff has failed to state a viable constitutional claim. Because at all relevant times the plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. Furthermore, to establish a claim for failure to protect,

> [A]n inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited

9

> deliberate indifference to inmate health or safety. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." *Id*. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).

*Bacchus v. Scarborough*, 466 F. App'x 269, 271 (4th Cir. 2012). *See Cullins v. Wilson*, No. 2:12-cv-1982-RMG, 2013 WL 2897027, at *12 (D.S.C. June 13, 2013) ("Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, the circuit courts have generally analyzed both situations under the same 'deliberate indifference' standard.") (citations omitted).

The record before the court demonstrates that the plaintiff's cell assignment was in fact changed on June 21, 2012 (doc. 58-3, Jones aff. ¶ 4; doc. 58-4, Jones aff., ex. A). The plaintiff has failed to show any evidence that his placement in protective custody was for any improper purpose or that defendant Metts was deliberately indifferent to his safety. The record is also clear that when the plaintiff expressed concerns about his safety while in protective custody, steps were taken to help protect his safety. According to an incident report dated June 25, 2012, the plaintiff notified a correctional officer that he was concerned about four other individuals who were assigned to the protective custody wing, and, upon receiving this information, the officer notified his supervisor, who ordered that the plaintiff and the other individuals be kept separated. Furthermore, there is no evidence that the plaintiff suffered any injury as a result of his placement in protective custody (Jones aff. ¶¶ 8-11, ex. A). Based upon the foregoing, the defendants are entitled to summary judgment on the plaintiff's claim that his cell assignment violated his constitutional rights.

***Defendant Kirkland***

To the extent that the plaintiff has attempted to assert that his constitutional rights have been violated based upon the alleged questioning by defendant Kirkland and the two unidentified federal agents or for the officers' alleged failure to advise him of the full array of warnings set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), the plaintiff's claim

fails as a matter of law because the plaintiff made no self-incriminating statements that were used against him in a criminal case. An individual's Fifth Amendment right against self-incrimination is violated "only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion); *see also Burrell v. Virginia*, 395 F.3d 508, 513-14 (4th Cir. 2005). In this case, the plaintiff has brought forth no evidence to show that any of the defendants violated his Fifth Amendment right because he has not faced criminal charges for any of the crimes about which he was questioned. As argued by the defendants, the plaintiff cannot establish a claim arising out of an alleged violation of the Fifth Amendment because he has not alleged that any compelled statement has been used against him in any criminal proceedings. In his response in opposition to the motion for summary judgment, the plaintiff appears to argue that the drug and weapons charges against him were enhanced following what he contends was unconstitutional questioning by defendant Kirkland (doc. 65, pl. resp. m.s.j. at p. 28). However, the record before the court shows that the enhanced charges were the result of additional testing performed on the methamphetamine (doc. 136, Kirkland aff. ¶ 8), and the plaintiff has presented no evidence that the enhanced charges were in any way related to the any questioning by defendant Kirkland.

The defendants further argue that they are entitled to summary judgment on any claim by the plaintiff for violation of his Sixth Amendment rights. This court agrees. "A criminal defendant's Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, which at least includes the point of formal charge, indictment, information, preliminary hearing, or arraignment." *U.S. v. Cain*, 524 F.3d 477, 481 (4th Cir. 2008) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). "[T]he Sixth Amendment proves no bar to an interrogation: (1) if it was the defendant, and not the Government, who initiated the interrogation; and (2) if the defendant voluntarily waived his right to counsel." *Id.* at 482 (citing *Michigan v. Harvey*, 494 U.S. 344, 352 (1990)).

In this case, the record is clear that the plaintiff was not a suspect in any of the crimes that he claimed to have knowledge of and on which he sought to meet with law

11

enforcement officials (doc. 136, Kirkland aff. ¶¶ 12-15). The plaintiff was being held at LCDC awaiting trial on a litany of drug charges (*id.* ¶¶ 7–8). However, the plaintiff claimed to have knowledge on a variety of unrelated crimes that he wished to share with the appropriate authorities (*id.* ¶ 12). Here, the plaintiff has not alleged that he was subjected to the process of a formal criminal proceeding as to any of the crimes on which he was allegedly questioned. Notably, the plaintiff admits in his complaint that he signed a form waiving his right to counsel at this meeting (doc. 20-3 at pp. 3-4). Moreover, the record is also clear that the alleged questioning of the plaintiff was at his own initiation.

To the extent that the plaintiff has attempted to assert a cause of action arising under the Sixth Amendment for any purported questioning that may have occurred when defendant Kirkland escorted the plaintiff to court for a hearing on a misdemeanor marijuana charge, that claim must also fail as the record before the court is clear that the plaintiff had not been appointed counsel for his misdemeanor charge (Kirkland aff. ¶ 10). Furthermore, as discussed above, to the extent the plaintiff alleges that the drug and weapons charges against him were enhanced following what he contends was unconstitutional questioning by defendant Kirkland, he has presented no evidence showing that the enhanced charges were in any way related to any questioning by defendant Kirkland.

## *Civil Conspiracy*

The plaintiff alleges that he "and the three law enforcement officers had a meeting of the minds. All had overreach of administrative authority." He claims that "now that [his] life has been threatened, [he] should be put into Witness Protection" (doc. 20-3 at pp. 5-6). To the extent the plaintiff alleges that defendant Kirkland and the two unidentified federal agents conspired to violate his constitutional rights, such claim fails. As noted above, to establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Glassman*, 628 F.3d at 150 (citing *Hinkle*, 81 F.3d at 421). A plaintiff must come forward

with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Hinkle*, 81 F.3d at 421. A plaintiff's factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. Here, the plaintiff has failed to show any evidence of an agreement or meeting of the minds by the defendants. As his conclusory allegations are insufficient to state a claim for civil conspiracy, summary judgment should be granted on this claim.

### *State Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motions for summary judgment (docs. 57, 58) should be granted.


July 17, 2013                                                           s/ Kevin F. McDonald
Greenville, South Carolina                                   United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).